UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| CAROL J. ENGEL, | ) | CIV. 08-5069-RHB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER AFFIRMING |
| | ) | ADMINISTRATIVE LAW JUDGE |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner, Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff applied for Social Security disability benefits and supplemental security income benefits. The Administrative Law Judge (ALJ) denied plaintiff's claim. Plaintiff seeks judicial review of the ALJ's decision. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The decision of the ALJ must be upheld if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Metz v. Shalala, 49 F.3d 374, 376 (8th Cir. 1995) (citing Sullies v. Shalala, 25 F.3d 601, 603 (8th Cir. 1994), cert. denied, 573 U.S. 1076, 115 S. Ct. 722, 130 L. Ed. 2d 627 (1995)); Smith v. Shalala, 987 F.2d 1371, 1373 (8th Cir. 1993). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind might find it adequate to support the conclusion. Fines v Apfel, 149 F.3d 893 (8th Cir.

1998) (citing <u>Oberst v. Shalala</u>, 2 F.3d 249, 250 (8th Cir. 1993)). Review by this Court extends

beyond a limited search for the existence of evidence supporting the Commissioner's

decision to include giving consideration to evidence in the record which fairly detracts

from the decision. <u>Brockman v. Sullivan</u>, 987 F.2d 1344, 1346 (8th Cir. 1993).

The Court's role under section 405(g) is to determine whether there is substantial

evidence in the record as a whole to support the decision of the Commissioner and not to

reweigh the evidence or try the issues de novo. <u>Murphy v. Sullivan</u>, 953 F.2d 383, 384 (8th

Cir. 1992). Furthermore, a reviewing court may not reverse the Commissioner's decision

"merely because substantial evidence would have supported an opposite decision." <u>Woolf</u>

<u>v. Shalala</u>, 3 F.3d 1210, 1213 (8th Cir. 1993); <u>Smith v. Shalala</u>, 987 F.2d at 1374 (citing <u>Locher</u>,

986 F.2d at 727 (quoting <u>Baker v. Heckler</u>, 730 F.2d 1147, 1150 (8th Cir. 1984))). The Court

must review the Commissioner's decision to determine if an error of law has been

committed. <u>Smith v. Sullivan</u>, 982 F.2d 308, 311 (8th Cir. 1992). As long as the ALJ's

decision is supported by substantial evidence, then this Court cannot reverse the decision

of the ALJ even if the Court would have decided it differently. <u>Smith</u>, 987 F.2d at 1374.

## BACKGROUND AND DISCUSSION

Plaintiff was born on December 24, 1953, making her 53-years-old at the time of the

administrative hearing. Administrative Record (AR) 63. On January 21, 2005, plaintiff filed

for benefits, alleging disability commencing on May 9, 2003. <u>Id.</u> Plaintiff alleged disability

due to a foot injury sustained when, while working as a ticket agent for an airline, a piece of luggage fell on her right foot. AR 129, 421.

Plaintiff's claim was denied at all stages and she appealed to the ALJ. The ALJ hearing was held on June 28, 2007. AR 16. Plaintiff was not represented by counsel. Id. Plaintiff and a vocational expert testified at the hearing. Id.

On July 20, 2007, the ALJ issued his decision denying plaintiff benefits. AR 16-29. The ALJ found that plaintiff's foot impairment was severe. AR 23. The ALJ also found that plaintiff was not entirely credible and was not able to return to her past relevant work. AR 24-27. The ALJ found that plaintiff retained the residual functional capacity (RFC) to work at the sedentary level, and that such jobs were available to her in the national economy. AR 28. Consequently, plaintiff's application for benefits was denied.

The ALJ found that plaintiff did not engage in substantial gainful activity beginning on May 9, 2003. AR 22. However, the ALJ also found that plaintiff returned to substantial gainful activity on October 10, 2006. Id. As a result, plaintiff's was no longer eligible for disability benefits as of October 10, 2006, and the Court need only concern itself with the period of time between those two dates.

Plaintiff appeals the ALJ's decision, raising a number of issues. Those issues can be distilled into two main arguments, however. First, plaintiff alleges that the ALJ's adverse credibility determination was not supported by substantial evidence. Second, plaintiff alleges that the ALJ erred in determining plaintiff's RFC by failing to consider plaintiff's

legitimate medical absenteeism. Related to this second issue, plaintiff argues that the hypothetical question posed to the vocational expert was insufficient, because it failed to include plaintiff's legitimate medical absenteeism as a component of plaintiff's RFC. These issues will be addressed in turn.

## A.     Plaintiff's Credibility

Plaintiff argues that the ALJ's credibility determination was erroneous primarily due to the allegation that the ALJ only considered plaintiff's condition at the time of the hearing, rather than her condition during the previous three years. The Court does not agree. The ALJ clearly stated that his credibility determination was based on "a complete review of the evidence." AR 25. In describing his review of the record, the ALJ indicated that he considered "forms completed in connection with [plaintiff's] application and appeal," "medical reports," and "the [plaintiff's] testimony." Id. Furthermore, the ALJ expressly noted the credibility analysis framework as required by Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984). "The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered." Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004). Thus, in terms of procedure, plaintiff's argument is unpersuasive.

In terms of substance, the ALJ offered what plaintiff counted to be fifteen reasons for discrediting her subjective complaints of pain. A few of the reasons offered by the ALJ were: 1) discrepancies between plaintiff's allegations and the information contained in the documentary reports; 2) plaintiff's daily activities were not limited to the extent one would

expect, given plaintiff's complaints of disabling symptoms and limitations; 3) plaintiff's

failure to return to work even after her treating physicians had authorized her to do so; and

4) plaintiff's failure to use strong pain medication was not indicative of disabling pain.  AR

24-27; Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001) ("Inconsistencies between

subjective complaints of pain and daily living patterns diminish credibility."); Murphy v.

Sullivan, 953 F.2d 383, 384 (8th Cir. 1992) (lack of strong pain medication is inconsistent with

subjective complaints of disabling pain).

The standard of review on this issue is a deferential one.  "The credibility of a

claimant's subjective testimony is primarily for the ALJ to decide, not the courts."  Pearsall

v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001).  The Court does not reweigh the evidence

or try the issue *de novo*.  Id.  As long as there is substantial evidence in the record to support

the ALJ's determination, it must be affirmed, even if this Court would have reached a

different conclusion were it the original trier of fact.  With these standards in mind, the

Court finds that the ALJ's credibility determination is supported by substantial evidence

and therefore must be affirmed.

## B.      Residual Functional Capacity

As a preliminary matter, the Court notes that the ALJ's determination of RFC is

interconnected with the ALJ's findings with respect to credibility.  Page v. Astrue, 484 F.3d

1040, 1043 (8th Cir. 2007) ("It is the ALJ's responsibility to determine [plaintiff's] RFC based

on all the relevant evidence, including medical records, observations of treating physicians

and others, and [plaintiff's] own description of her limitations.") (internal quotations

omitted). In other words, if the ALJ properly discredited plaintiff's subjective complaints

of pain, that fact may have some bearing on plaintiff's RFC.

The ALJ found that, throughout the time period in question plaintiff retained the

RFC to perform work at the sedentary level. AR 23, 28. Plaintiff argues that the ALJ erred

in reaching this conclusion because he failed to consider plaintiff's legitimate medical

absenteeism when determining RFC. There is no doubt that plaintiff was absent from work

on numerous occasions during the time in question, due to surgery, recovery from surgery,

complications from surgery, and physical therapy. There is also no doubt that the record

contains numerous notes from medical providers indicating that plaintiff was to be "off

duty" for certain periods of time. That said, the record is also replete with medical notes

indicating precisely the opposite – that plaintiff was authorized by her physicians to return

to work. In other words, the record reflects that there were conflicting reports on the issue

of whether or not plaintiff was capable of returning to work.

For instance, on May 9, 2003, the alleged date of onset of disability, plaintiff

underwent surgery on her injured foot. AR 174. The surgery was performed by Dr. Desai.

Id. Three days later, Dr. Desai authorized plaintiff to return to modified duty work. AR

311. However, the following day, a nurse instructed plaintiff to remain off duty until May

27, 2003. AR 399.

Between June and August of 2003, Dr. Desai repeatedly described plaintiff's only work restrictions as "no heights and or ladders." AR 287, 292, 295, 297, 299, 302. However, a conflicting medical note from July 7, 2003, indicates that plaintiff was ordered to "[c]ontinue no activity per recommendations from Dr. Desai." AR 373. Similarly, a note from July 25, 2003, provides the same restriction: "[t]he patient will remain off duty." AR 369.

On October 24, 2003, Dr. Desai noted "no heights and or ladders" as plaintiff's only work restriction. AR 275. That same day, a nurse's note indicated that plaintiff was to remain "off duty." AR 354. Further examples of this type of inconsistency are present in the record.

"The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five." Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004). Based on the inconsistencies contained within the medical record, plaintiff cannot sustain her burden of showing that medical absenteeism rendered her disabled during the time in question. Nor can plaintiff demonstrate that the ALJ's findings with respect to plaintiff's RFC were in error. The Court notes the record is devoid of an opinion from any medical provider that plaintiff was incapable of working for a twelve-month period, which is the basis for a finding of disability. The Court also notes that simply because plaintiff had a medical appointment or

a physical therapy session on a particular day does not necessarily suggest that plaintiff was incapable of working that day.

In short, there is a question about whether or not plaintiff's medical absences were in fact legitimate. The ALJ's adverse credibility determination is relevant to this question, and the record suggests that even the medical professionals responsible for treating plaintiff had their doubts. For instance, a nurse's note from November 12, 2003, provides the observation that "[b]ased on when I see the patient walking and when I saw her in my office, [plaintiff] seems to be doing well and I think . . . this girl could get back to restricted duty *even though she is very hesitant to do so.*" AR 349 (emphasis added). And a medical note from November 4, 2004, provides the following observation from a doctor: "I think [plaintiff] is having some problems with her foot, but I do not think it is terribly disabling. I have recommended . . . to her that she return to work and have all of her restrictions thrown out[.]" AR 564. As the ALJ noted, plaintiff's earning records do not indicate that she returned to work after receiving this recommendation. AR 26.

The ALJ's findings with respect to plaintiff's RFC are supported by substantial evidence. The ALJ, having discredited plaintiff's subjective allegations of disabling pain, did not find medical absenteeism to be a valid component of plaintiff's RFC. As such, the ALJ had no obligation to include medical absenteeism in the hypothetical question posed to the vocational expert. Plaintiff has failed to sustain her burden of proving that the ALJ's RFC determination was in error. The ALJ's findings are therefore affirmed.

8

## C.    Other Issues

Plaintiff raises numerous other issues in her 52-page brief, most of which require no discussion in light of the Court's findings.  However, two issues may be discussed summarily.  First, plaintiff notes the ALJ's erroneous statement that there was no medical evidence suggesting that plaintiff needed to elevate her foot each day.  Defendant admits that the ALJ was wrong about that, because the record clearly does contain physicians' instructions for plaintiff to elevate her foot on occasion or as needed.  AR 280, 287, 297, 299, 302, 311.  However, the ALJ discussed this issue with the vocational expert at the hearing, and the vocational expert stated that in the sedentary jobs identified, an employee would be able to put one's feet up "at least on an occasional to frequent basis."  AR 644-45.  As such, any error on the ALJ's part was ultimately harmless and did not prejudice plaintiff in any way.  Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996) (the Court "will not set aside an administrative finding based on an arguable deficiency in opinion-writing technique when it is unlikely it affected the outcome").

Plaintiff also claims that the vocational expert invoked the Americans With Disabilities Act (ADA) when he and the ALJ discussed the idea of potential employers "accommodat[ing]" for plaintiff's condition.  AR 642, 645.  There is no reason to suspect that either the ALJ or the vocational witness were using the word "accommodate" in its legal sense as understood by the ADA.  Indeed, neither the ALJ nor the vocational witness made any reference to the ADA during the hearing.  It appears to the Court that the word

9

was used by the ALJ as a way to properly describe plaintiff's condition and limitations, in an attempt to obtain the most comprehensive opinion possible from the vocational witness. The Court thus finds no merit to this issue on appeal. Nor are any other issues raised by plaintiff deemed to be meritorious.

## CONCLUSION

Based upon the foregoing discussion, it is hereby

ORDERED that plaintiff's complaint (Docket #1) is dismissed and the decision of the ALJ is affirmed in its entirety.

Dated this 24th day of July, 2009.

BY THE COURT:

RICHARD H. BATTEY
UNITED STATES DISTRICT JUDGE